UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

A.S. by and through ILITA WILLIS,  )
as next friend,                    )
                                   )
        Plaintiff,                 )
                                   )
    vs.                            )        Case No. 4:08CV1064 CDP
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
        Defendant.                 )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying plaintiff's application for supplemental

security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§

1381 *et seq*. Plaintiff's mother, Ilita Willis, brings this action on behalf of her son,

claiming that he is disabled because he suffers from learning and behavioral

problems. The Administrative Law Judge, however, found that plaintiff was not

disabled. Plaintiff appeals the ALJ's decision denying benefits. Because I find that

the ALJ's decision denying benefits is not supported by substantial evidence, I will

reverse the ALJ's decision and remand to the Commissioner for another hearing.

## Procedural History

Plaintiff, through his mother, filed an initial application for child's supplemental security income benefits under Title XVI of the Social Security Act on May 2, 2006. Plaintiff was issued an unfavorable determination on his application on June 12, 2006. Plaintiff requested a hearing before an ALJ, which was held December 6, 2007. Plaintiff's mother appeared with counsel and testified at the hearing. In a decision dated January 22, 2008, the ALJ upheld the denial of benefits. Plaintiff filed a request for review with the Social Security Administration Appeals Council on March 12, 2008, which was denied by the Appeals Council on May 30, 2008. Thus, the ALJ's determination stands as the final determination of the commissioner. Plaintiff filed this appeal on July 21, 2008.

## Evidence Before the ALJ

### Plaintiff's Mother's Evidence

Plaintiff's mother, Ilita Willis, testified before the ALJ on December 6, 2008. Plaintiff did not testify at the hearing. Willis testified that her son was thirteen years old and in eighth grade at the time of the hearing. She testified that he has been in her care and custody throughout his lifetime, except for a one-month period from February to March of 2008. For that period, Willis sent plaintiff to St. Vincent's Home for Children because of his violent behavior and disciplinary problems.

Willis testified that, at the time of the hearing, plaintiff was a student at the Litzsinger school, which is a special school district school. He was previously a student in the Parkway School District, but was kicked out because of his behavior. At Litzsinger, plaintiff is provided with special accommodations, including one-on-one instruction and constant supervision. Willis testified that the school district has informed her that her son is rude, disrespectful, and has attempted to fight both students and teachers. Plaintiff's teachers have also informed Willis that he is behind in academic performance, and that he refuses to participate or complete his work. Willis had been told that plaintiff is currently reading at a sixth grade level.

As far as social skills, Willis testified that her son gets along with some other kids, but tends to turn on his friends quickly. Willis testified that her son is prone to fighting and bullying, and shows destructive behavior at school. Willis estimated that plaintiff had been suspended more than ten times during the current academic year. Willis also testified that her son has problems completing tasks and chores. Willis claimed that he refuses to do his homework, but then clarified that she does not think that her son is actually given homework because of a lack of resources at the school.

Willis testified that the first time plaintiff was seen by a doctor for his impairments was in August, 2008. Plaintiff started taking medications, Concerta and Risperdal, in September, 2008. Willis testified that, since her son has been on

the medication, she has not observed any change in his condition.  In addition to the medication, plaintiff speaks with a social worker, Anita Bazile, once a month over the telephone.  These phone sessions began in February, 2007.  Willis testified that plaintiff also sees a psychiatrist, Dr. Oruwari, every month.

In a Child Function Report, Willis indicated that her son was able to: answer the telephone and make telephone calls, repeat stories he has heard, ask for what he needs, and talk with his family and his friends.  On his communication abilities, Willis indicated that he was unable to: deliver phone messages, tell jokes or riddles accurately, explain why he did something, or use sentences with "because," "what if," or "should have been."  On his learning and understanding abilities, Willis indicated that her son was able to read and understand sentences in comics and cartoons, spell words of more than four letters, tell time, and add and subtract numbers over ten.  Willis indicated that he was unable to: read and understand stories in books, magazines, or newspapers, multiply and divide numbers over ten, understand money or make correct change, or understand, carry out and remember simple instructions.  On his social behavior, Willis indicated that her son has friends his own age, can make new friends, and plays team sports.  Willis indicated that her son does not generally get along with adults, his siblings, or teachers.  Willis further indicated that, while he participates in team sports, her son is not a team player and gets into fights.

Willis also noted that her son has problems taking care of his personal needs and safety. While he is able to take care of his personal hygiene, help around the house, get to school on time, and ask for help when needed, he is unable to wash and put away his own clothes, cook his own meals, study or do homework, take needed medication, use public transportation by himself, accept criticism or correction, keep out of trouble, obey rules, or avoid accidents.

In multiple filings related to this claim, Willis indicated that plaintiff's disabilities began on September 1, 2001.

School Records

In 2003, when plaintiff was in third grade, he was evaluated by a multi-disciplinary team to determine his need for specialized educational services. A psychological examiner worked with plaintiff's father to complete an in-depth social history of plaintiff. The background information indicated that plaintiff had been suspended from school four times for various acts of violence and dissent. The length of his suspensions ranged from two to five days. Plaintiff's father indicated that plaintiff experienced frequent mood changes, would stay angry for two to three hours, mumbled, and had difficulty expressing himself. Plaintiff's father also indicated that plaintiff wanted to be helpful at home, and was responsible for keeping his room clean and making his bed. Plaintiff was able to do

his homework, was willing to help, try new things, and was kind to his brother. Plaintiff loved to ride his bike, play sports, and dance.

Intelligence testing completed as a part of the 2003 evaluation showed a full-scale IQ of 91, verbal IQ of 87, and performance IQ of 98, scores that were within the lower limits of the "average" range of intelligence. Plaintiff's broad reading and writing skills were considered below average, but his math skills were average. The evaluators also noted behavior concerns such as difficulty concentrating, inattention, defiance, and sudden mood changes. A licensed clinical social worker found plaintiff to be highly guarded, demonstrating no insight into his behavioral difficulties and no remorse for his actions, and noted that plaintiff had an unusually positive self-concept.

In an addendum to the 2003 report, an occupational therapist opined that plaintiff had some difficulty with sensory processing and recommended more intense and more focused stimuli throughout the school day, the allowance of breaks and movement as well as the use of preferential classroom seating, headphones, and fidgets.

In December, 2005, when plaintiff was in sixth grade, a team of teachers and school representatives completed an Individualized Education Program for plaintiff. The team noted that the services of a social worker had been added to help assist with plaintiff's anger control. The 2005 IEP noted that plaintiff needed support

with reading and written expression, and that he benefitted from teacher proximity, paraphrasing of directions, assignments from a concrete level, and extreme structure and routines. It noted that plaintiff had improved in reading aloud and writing, and improved his syntax and morphology to 75% of his goals, but that he was only following 10% of his behavior plan at that point. Plaintiff did well in math, appreciated choices, and needed to do his homework independently. The 2005 IEP team concluded that plaintiff would be outside of his general classroom 21-60 % of the day. Progress noted on the 2005 IEP show that plaintiff was making sufficient progress towards his goals in March, April, and May.

In March, 2007, the IEP team concluded that plaintiff would benefit from a shortened day because he performed better in a small group setting with one-on-one instruction, given his "inappropriate social skills" and "increase in physical aggression in unstructured settings." It was during this time that plaintiff's mother placed him in a group home because of his behavior.

In April, 2007, the IEP team listed plaintiff's strengths as having a good sense of humor, being artistic, and working well with younger children outside the family. Staff were concerned with plaintiff's compliance in an unstructured setting, his sudden mood swings, increased physical aggression, and decrease in overall academic performance. The IEP team determined that plaintiff would attend school in a different school building. The 2007 IEP noted increased physical aggression,

completion of 0% of homework at home, dependance on staff to help him complete his work, easy distraction by other students, failing grades in content subjects, 18 days of out-of-school suspension, and lack of interest in the classroom. On the 2007 IEP goals and reporting form, plaintiff is shown as having made progress towards all his goals in two consecutive reporting periods.

Two of plaintiff's teachers filled out "child's functional assessment" questionnaires in November, 2007. Both noted that, in their opinion, plaintiff had extreme limitations in the areas of "acquiring and using information," "interacting and relating to others," and "attending and completing tasks." Susan Wilhauk noted that plaintiff is unable to complete multiple steps in written directions, write grammatically correct sentences, understand content texts, and respond appropriately to unfamiliar adults. She further noted that plaintiff has inappropriate social skills, uses profanity, is physically aggressive, bullies both peers and adults, and has severe difficulty with academics. Kelli Traxler noted similar problems, and added that plaintiff has difficulty understanding word meaning, and reads at a fourth grade level.

Plaintiff's school records indicate that he has been suspended from school at least eight times since the beginning of the 2005 school year. Five of those suspensions occurred in 2007: one suspension in each of the months of February, March, September, November, and December. In addition to the out-of-school one-

day suspensions, plaintiff has been disciplined seventeen times since September, 2005, ranging from verbal reprimands to in-school suspensions. Reasons for the discipline included fighting, use of profanity, disrupting class, skipping class, insubordination, refusing to comply with staff directions, throwing objects at peers and staff, hitting both staff and peers, and fighting peers. More than one-third of those reprimands occurred between August and November, 2006.

Medical Records

At a well-child check-up in November, 2005, it was noted that plaintiff followed rules at school and had mood changes. Physical examination in all areas was within normal limits, and plaintiff was noted as not engaging in high risk behaviors such as smoking cigarettes. Plaintiff was noted to be overweight, and suffering from seasonal allergies

At St. Vincent's, plaintiff met with Anita Bazile, a social worker/therapist. Bazile noted that plaintiff had successfully completed a 30-day program, and had met his goals of decreased acts of aggression and increased school attendance.

In August, 2007, a social worker performed a psychological intake assessment at the Hopewell Center, and recorded that plaintiff presented with poor eye contact but was overall very cooperative with the interviewing process. His examination showed flat affect and poor memory and fund of knowledge. The assessment recorded risk factors as plaintiff's poor relationship with his father and

plaintiff's mother's unrealistic expectations of the father's responsibility.  At that

time, plaintiff was not taking any medications.  Plaintiff admitted to episodes of

depression, and his mother reported that he made superficial cuts on his arm on one

occasion.

In early October, 2007, psychiatrist Dr. Patrick Oruwari diagnosed plaintiff

with ADHD and oppositional defiant disorder, and prescribed medication -

Risperdal and Concerta.  The mental status examination showed good hygiene, poor

eye contact, restrictive affect, and poor insight.  Progress notes from the following

month show that plaintiff's medication dosage was altered.  Since 2007, social

worker and psychiatrist assessments variously gave plaintiff an Axis V GAF around

45 and 50.[1]

## Legal Standards

Title 42 U.S.C. § 1382c(a)(3)(C)(I) provides that "[a]n individual under the

age of 18 shall be considered to be disabled for purposes of [SSI] if that individual

has a medically determinable physical or mental impairment, which results in

marked and severe functional limitations, and which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not

---

[1]A GAF score indicates a person's psychological, social, and occupational functioning on
a hypothetical continuum of mental health-illness.  *Bridges v. Massanari*, 2001 WL 8823218, at
*5 n. 1 (E.D. La. 2001).  A GAF score between 41 and 40 indicates "[s]erious symptoms (e.g.,
suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in
social occupational or school functioning (e.g. no friends, unable to keep a job)."  American
Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th Ed. 2000).

less than 12 months." The Commissioner's decision denying a child SSI benefits is reviewed by this Court to determine whether it is supported by substantial evidence. *Rucker v. Apfel*, 141 F.3d 1256, 1259 (8th Cir. 1998); *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998); *Frankl v. Shalala*, 47 F.3d 935, 937 (8th Cir. 1995). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Cox v. Apfel*, 160 F.3d 1203, 1206-07 (8th Cir. 1998). To determine whether the decision is supported by substantial evidence, the court is required to review the administrative record as a whole to consider:

(1)     the credibility findings made by the ALJ;

(2)     the education, background, work history, and age of the claimant;

(3)     the medical evidence given by claimant's treating physicians;

(4)     the subjective complaints of pain and description of the claimant's physical activity and impairment;

(5)     the corroboration by third parties of the claimant's physical impairment;

(6)     the testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7)     the testimony of consulting physicians.

*Brand v. Sec'y of Dept' of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980). When reviewing the record to determine whether the Commissioner's

decision is supported by substantial evidence, however, the court must also take into account evidence in the record that fairly detracts from that decision. *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998); *Bryant v. Apfel*, 141 F.3d 1249, 1250 (8th Cir. 1998). The court may not reverse the decision merely because substantial evidence would also support an opposite conclusion. *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999); *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). *See also Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." (internal quotations omitted)).

Under the Act, the ALJ inquires first into whether the child is currently engaged in substantial gainful activity and next into whether the child has an impairment or a combination of impairments that is severe. *Walker v. Apfel*, 141 F.3d 852, 854 (8th Cir. 1998); *Bryant*, 141 F.3d at 1251. If the ALJ finds at step two of the evaluation that a child's impairments are severe, as in the instant case, then the question at step three is whether those severe impairments meet or medically equal the severity of a set of criteria for an impairment listed in the regulations, or are functionally equivalent to the listings. 20 C.F.R. § 416.924(a) (2008); 20 C.F.R. pt. 404, subpt. P, app. 1, pt. B. *See also Walker*, 141 F.3d at 854

(finding last step of evaluation process to be whether the impairment or combination if impairments is of comparable severity to impairments that would disable an adult).   To determine functional equivalence, the ALJ must decide whether the impairments cause "marked and severe functional limitations" and whether they meet the duration requirement of at least one year.  *Walker*, 141 F.3d at 854; 20 C.F.R. § 416.924(d).   To determine functional equivalence, the Commissioner considers the child's functioning in six areas or domains.  20 C.F.R. § 416.926a(b)(1).  Those domains are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being.  *Id*.

"[I]n general, a child's impairment(s) is of 'listing level severity' if it causes marked limitations in two broad areas of functioning or extreme limitations in one such area."  20 C.F.R. § 416.925(b)(2)(ii).  A limitation is "marked" for children from age 3 to age 18 if it is "'more than moderate' and 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2).  A "marked" limitation is also found when the impairment(s) "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id*.  *See also Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 651 (8th Cir. 2004) (quoting § 416.926a).  There may be a "marked" limitation in only one activity or in several activities as a result of the

interactive and cumulative effects of the child's impairments. 20 C.F.R.
§ 416.926a(e)(2).

A limitation is "extreme" for the same age group if the impairment(s)
"interferes very seriously with [the child's] ability to independently initiate, sustain,
or complete activities." 20 C.F.R. § 416.926a(e)(3). "'Extreme' limitation also
means a limitation that is 'more than marked.'" *Id.*

When assessing the degree of a child's functional limitations, the ALJ may
consider, inter alia, "the effects of structured or supportive settings," how the child
functions in school, and the effects of the child's medications, if any. 20 C.F.R.
§ 416.926a(a)(1)-(3).

In the domain of "acquiring and using information," the ALJ considers, inter
alia, how well a child acquires, learns, and uses information. 20 C.F.R. §
416.926a(g). An adolescent child, like plaintiff, should continue to demonstrate in
middle and high school what he has learned in academic assignments. The child
should also be able to use what he has learned in daily living situations without
assistance (e.g., going to the store, using the library, and using public
transportation). The child should be able to comprehend and express simple and
complex ideas, using increasingly complex language in learning and daily living
situations. The child should also learn to apply these skills in practical ways that

will help him enter the workplace after finishing school.  20 C.F.R. §
416.926a(g)(2)(v).

In the domain of "attending and completing tasks," a child's ability to focus
and maintain attention and to begin, carry through, and finish his activities,
including the pace at which he does so and the ease with which he changes
activities is considered.  20 C.F.R. § 416.926a(h).  An adolescent should be able to
pay attention to increasingly longer presentations and discussions, maintain his
concentration while reading textbooks, and independently plan and complete long-
range academic projects.  The child should also be able to organize his materials
and to plan his time in order to complete school tasks and assignments.  In
anticipation of entering the workplace, the child should be able to maintain attention
on a task for extended periods of time, and not be unduly distracted by peers or be
unduly distracting to them in a school or work setting.  20 C.F.R.
§ 416.926a(h)(2)(v).

In the domain of "interacting and relating with others," the ALJ considers,
inter alia, how well a child initiates and sustains emotional connections with others,
cooperates with others, and responds to criticism.  20 C.F.R. § 416.926a(i).  An
adolescent should be able to initiate and develop friendships with children of the
same age and to relate appropriately to other children and adults, both individually
and in groups.  The child should be able to solve conflicts with peers, family

members, or adults outside of the family. The child should also recognize that there are different social rules for his friends and for acquaintances and adults. The child should be able to intelligibly express his feelings, ask for assistance, seek information, describe events, and tell stories, in all kinds of environments, and with all types of people. 20 C.F.R. § 416.926a(i)(2)(v).

Finally, in determining a child's disability, the Commissioner must consider all relevant evidence which may include medical evidence, school records, and information from people who know the child – such as parents, caregivers, and teachers – and can provide evidence about his functioning. 20 C.F.R. § 416.924a(a).

### The ALJ's Findings

The ALJ found that plaintiff was not disabled. She issued the following specific findings:

1.  The claimant was born on January 28, 1994. Therefore he was an adolescent on May 2, 2006, the date the application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).

3.  The claimant has the following severe impairments: an attention deficit hyperactivity disorder and oppositional defiant disorder (20 CFR 416.924(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.     The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924a(d) and 416.926a).

6.     The claimant has not been disabled, as defined by the Social Security Act, since May 2, 2006, the date the application was filed (20 CFR 416.924(a)).

The ALJ concluded that Willis' testimony was credible to the extent that her son has demonstrated difficulties with both his behavior and learning. However, the ALJ found that the record, as a whole, does not establish that plaintiff's condition is severe enough to be considered disabling under the SSA. The ALJ noted that plaintiff did not see a doctor for his condition until August, 2007, and did not start taking medication until September, 2007. She also noted that adjustments to plaintiff's prescribed medications had only recently been initiated, and that plaintiff's therapy consists only of talking to a social worker once-a-month on the phone.

The ALJ found that, in the area of "acquiring and using information," plaintiff is less than markedly impaired. Although plaintiff had switched from the public school system to the special school system so that he could have individualized educational services, his current grade level was age-appropriate, his overall cognitive functioning abilities are in the low average range, and he has made adequate progress so as to advance a grade level each year.

In the area of "attending and completing tasks," the ALJ found that plaintiff was also less than markedly impaired. While plaintiff is easily distracted, he has advanced every year in school, and has satisfactorily completed tasks with his IEP.

Further, the ALJ found that plaintiff is less than markedly impaired in the area of "interacting and relating to others." He successfully completed a 30-day program at St. Vincent's, and, according to the social worker attending to him, he increased school attendance and decreased acts of aggression. Plaintiff has not been suspended for long periods of time.

Finally, the ALJ noted that plaintiff has no significant limitations in the other three domains ("moving about and manipulating objects," "caring for himself," and "health/physical well being").

<u>Discussion</u>

Plaintiff argues that the ALJ failed to articulate a legally sufficient rational for her decision denying benefits. Specifically, plaintiff argues that the ALJ failed to compare plaintiff's functioning to that of a child the same age who is able to function independently on a sustained basis in an appropriate manner. Had the ALJ properly compared plaintiff's functioning to that of other children who are not impaired, according to plaintiff, the ALJ would have found plaintiff to have marked levels of impairment in the domains of "acquiring and using information," "attending and completing tasks," and "interacting and relating with others."

I find that the ALJ's decision was not based on substantial evidence on the record as a whole. "When determining whether a child suffers from limitation, the ALJ must compare the child to other children of the same age *without impairments*." *Carreno v. Astrue*, CV 01-1678-PHX-SMM, 2008 WL 2704779, at * 7 (D. Ariz. July 7, 2008).  Not only did the ALJ fail to compare plaintiff's functioning to that of other children his age without impairments, she also failed to support her conclusions with adequate evidence and reasoning.

In assessing plaintiff's level of functioning in the domain of "acquiring and using information," the ALJ noted that plaintiff had advanced a grade every year, and had low-average IQ.  The ALJ did not discuss how well plaintiff acquires, learns, and uses information, nor did she compare his abilities to children without a disability, or in an unstructured setting.  She did not discuss any of the factors listed in 20 C.F.R. § 416.926a(g)(2)(v).  The evidence cited by the ALJ to support her conclusion that plaintiff is less than markedly impaired in this domain - advancing a grade level every year and having low-average IQ - is not substantial evidence based on the record as a whole.

In the domain of "attending and completing tasks," the ALJ found that, while plaintiff is easily distracted, he has advanced a grade every year.  The ALJ also found that plaintiff was only recently placed on medication, and that "careful monitoring and adjusting of the medications" will help him control his symptoms.

The ALJ did not discuss plaintiff's "ability to focus and maintain attention and to begin, carry through, and finish his activities, including the pace at which he does so and the ease with which he changes activities," nor did she show how she considered the factors listed in 20 C.F.R. § 416.926a(h)(2)(v). Advancing a grade level each year is not substantial evidence that plaintiff is not markedly impaired in this domain. Further, there is no evidence in the record to support the ALJ's conclusion that "carefully monitoring and adjusting" of plaintiff's medications will help to control his symptoms.

In the domain of "interacting and relating with others," the ALJ found that plaintiff was less than markedly impaired because he had successfully completed the 30-day program at St. Vincent's, had, according to the social worker at St. Vincent's, shown increased school attendance and decreased acts of violence, and had not had any extended periods of suspension. This evidence does not support a conclusion about how well plaintiff "initiates and sustains emotional connections with others, cooperates with others, and responds to criticism," nor does it provide support for any of the considerations under 20 C.F.R. § 416.926a(i)(2)(v). The ALJ did not discuss why she based her conclusion solely on the report of the social worker, nor did she explain why she did not consider contrary reports from plaintiff's teachers or treating physician.

The issue for the court is not whether plaintiff is disabled, or whether the record contains evidence to support a finding of disability. The question for the court is whether substantial evidence supports the ALJ's decision that plaintiff is not markedly or extremely limited in these three domains. It does not. I find that the ALJ's conclusions that plaintiff's limitations in the domains of "acquiring and using information," "attending and completing tasks," and in "interacting and relating with others" are less than marked, are not based on substantial evidence from the record.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further development of the record as to the plaintiff's functioning in the domains of "acquiring and using information," "attending and completing tasks," and "interacting and relating with others" under the applicable regulations and compared to the functioning of other children plaintiff's age.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of June, 2009.